Good morning. Case number 21187, BlephEx v. Pain Point Medical. Mr. Kelly, whenever you're ready. Thank you, Chief Judge Prost. Good morning, Your Honors, and may it please the Court. This Court's law is clear. The proper construction of a claim term can usually be resolved on the intrinsic evidence alone, and this case is no exception. The District Court's error here was elevating a dictionary definition over that intrinsic evidence, and that error was the result of a cascading series of mistakes. The Court discounted clear language in the specification based on its own theory outside the record, and then it used that theory to discount other evidence in the intrinsic record. It even adopted a scorecard approach at one time. It counted up prior art references as if it were endeavoring to figure out what the average term, or what the This is Judge Prost. Can I interrupt you just because time is short? I appreciate and understand all of your arguments, but, you know, the odd thing for me, at least, and you've been around almost as long as I have, is Phillips' rejection of the supremacy of dictionary definitions went to the fact that usually they were broader than what the intrinsic record would allow. Here we kind of have the reverse of that, right? But let me ask you, going back to Phillips in terms of dictionaries versus non-dictionaries and reliance on those, Phillips starts off with the plain and ordinary meaning of the claims, right? Yes. So if we look at it that way, obviously the claim language, repeated term in the claim that's in dispute here is swab. So if you start off by looking at the plain and ordinary meaning of the term swab, why would not almost the uniform definition of swabs being absorbent be sufficient, or at least in the absence of any lexicography otherwise? Well, Your Honor, I would start by pointing out that it's the plain and ordinary meaning in the context of the invention, as would be understand by one skilled in the art. And even though contemporary dictionaries, the majority of them, even though if they happen to That doesn't mean that's how somebody skilled in this art would read this application. But it's all of the dictionaries, right? It's not just some of them. Your Honor, I think at least one of them didn't refer to the word absorbent in the definition itself. The one that referred to cotton or gauze wrapped around the end of a slender wooden stick. And of course we know from Dr. Donenfeld's reference to a fairly old article that there is such a thing as non-absorbent cotton. And that's why there was such a thing as a non-absorbent cotton swab at least 100 years ago. But Your Honor, regardless of whether Go ahead. Thank you, Chief Judge. I was going to say, regardless of whatever those dictionaries say, we still do have to start with the intrinsic evidence itself and the application itself, which refers to any material safe for contacting the eye without harming the eye. And then if the question shifts... But wait, you can't stop with that part of the specification. You have to go and read the top part of column four. And the reference to porous means absorbent, right? I don't know that that's correct, Your Honor. But it is correct, of course, that an embodiment in the specification does refer to absorbency. It is correct that that's what the sponge is doing because one of the embodiments, only one of the embodiments, is the application of liquid to the eye for the purpose of helping out the process, which otherwise is not claimed or described as using a liquid at all, either in delivery or in absorption. Okay. But wait, just stick with my question here. Let's assume that porous and absorbent are synonyms, which is what the dictionaries show. And it says here, it will be appreciated that similar materials. Why isn't that a reference to similar materials that have the characteristics of soft, porous, and resilient? Two reasons, Your Honor. First, it's still only in the context of that embodiment, and it is not in the broader context of the sentence. It says similar materials capable of removing debris from on the eye without harming the eye are readily apparent and may also be used. So that bookend at the end of that discussion, referring to similar materials, directly speaks to what the similarity is, capability of removing debris from the eye without harming the eye. But even if you were to read all of that... I'm sorry. Let me interrupt you just so your answer can be more fulsome. If you look at the sentence that you repeatedly point to appropriately, which is at the bottom of column three, that says manufacture of any material suitable for contacting the eye without harming the eye. What is the difference between that sentence and the one that Judge Dyke just referenced in column four? Why do you need that sentence in column four if the sentence in column three means what you say it means? Do you understand my question? The two sentences... seem quite similar, right? They do seem similar, Your Honor. And I would say that the primary definition or the language that is most important is the language that refers to the type of material, which is exactly contrary to how the district court construed the term. As to the second part of your question about the second sentence, I would say that second sentence comes in the context of discussing the sponge embodiment and clarifies that that embodiment isn't limiting the entire specification to a sponge. And we also know that because there's a dependent claim that refers to sponge. But if we just step back and then ask the question that I think is sort of lurking behind all of this, which is, well, it does say swab and doesn't swab mean absorbent, we can look right to the intrinsic reference... evidence, I'm sorry, and confirm that the answer to that question is no, it doesn't mean that. We know that because prior art that was directly relevant to eye care referred to non-absorbent silicone swabs. Well, before you get to that, can we still stay at the language in column three and column four, the word, the embodiment is prefaced by the word however. What does however mean in that context? Your Honor, I think however means... I'm sorry, I would say that however means that the author of part of the specification is acknowledging that the discussion is now shifting to an embodiment and it's talking about something narrower than what was just discussed. So the specification says the sponge can be made out of any material that's safe to contact the eye without harming the eye. And then it transitions over to a narrower embodiment and it signals that transition with the word however. So we would read this entire discussion as entirely consistent with the notion, consistent with the intrinsic evidence, that a swab need not be absorbent, but that it can be and that a sponge is an embodiment within the scope of this patent that is an absorbent swab. It's separately claimed. If we read in column four, the sentence beginning on line seven, it will be appreciated, however, that similar materials, if we read that reference to similar materials to being materials are soft, porous, and resilient, that suggests that the material has to be porous, right? If you read it that way, it suggests that, Your Honor, but for the embodiment of figure one, which is what this part of the specification is talking about, that's the very last line on column three. However, as shown in the embodiment on figure one, the rest of that paragraph, we would maintain, is directed to the embodiment in figure one. And I can't disagree that the embodiment in figure one includes a sponge, but that's not the question. The question is not whether or not swab... Mr. Kelly, this is Judge Hughes. Can I just interrupt a minute? I'm trying to follow your reasoning a little bit, even going to your argument that the broad material suitable for contacting the eye without harming the eye, that's still defining the material to be used for a swab, is it not? It is, Your Honor, and... And I mean, potentially, there are types of swabs that you could use for certain things that you couldn't use in the eye. So why isn't that broad definition still in the context of the swab? And let me get to my real point here. I think we can, I mean, I think I heard you agree that even if the general, common, plain and ordinary meaning of swab is absorbent, you're saying, in this art field, in this field of endeavor, a skilled artisan would know that swab can be non-absorbent. Is that correct? It's correct in this field of endeavor, and I don't know that it's not correct in other fields of endeavors as well. Well, you know... That, okay, okay, but let me just ask my question then. What's the evidence for that? Your Honor... Well, we also have the Granin reference. It's more than the Freeman reference, Your Honor. The Granin reference is the reference that was applied during prosecution that had a silicone heat sink that the examiner used to meet the swab limitation. So the examiner read swab on something that was silicone that touched just in front of the eyelid. And then we have more than that, though, Your Honor. We have Dr. Donenfeld's declaration... I'm sorry, is that the reference where you use heat on the outside of the eye to remove the blockage? Well, to soften the blockage, yes, Your Honor. That's the Granin reference. And then we have... Does that refer to it as a swab? It does not use the word... Right, well, how is that helpful to you? It's helpful, Your Honor, because... Calling that a swab. Because the examiner... Call this swab. Because the examiner... Well, because the examiner is who was reading the specification and interpreting the claims in light of the specification. And it's the examiner's job to apply the claim to the prior art as the examiner reads the scope of the claim. And so... I mean, I guess what I'm getting at here is... Sorry to interrupt you. I know it's hard when you choose the word swab to describe your invention or what's to be used in your method here. It carries certain implications. And if you meant something other than swab, you could have used something else, like it appears they did in... What did you say, Granin? And so it seems to me that it's an impactful choice when you use the word swab. And if you're going to get around the plain and ordinary meaning of swab as being absorbent, then you have to have a pretty clear lexicography in the specification. And I just don't see that here. I think at best, it's ambiguous. And I would think you'd agree if it's ambiguous, then we do get to the extrinsic evidence as the district court judge said. Please answer. Your Honor, thank you. Your Honor, my response to that is that even though a lay person might come to this specification with an understanding of what the term swab means to them, the intrinsic evidence in this case is clear that that is not what a person skilled in this art would come to this specification with. So when the author of this document, when Dr. Reinerson disclosed his invention, he wasn't a lay person who buys Q-tip brand swabs at CVS. He was a doctor who The record in this case demonstrates that both experts, Lefebvre's experts and Maibo's experts agreed that not all swabs are absorbent. We have screenshots from medical supply catalogs that refer to non-absorbent swabs. We have descriptions of the materials used to make the swabs from the medical supply catalogs that refer to non-absorbent swabs. Just because a lay person would think swab means a cotton Q-tip, it does not mean that someone skilled in this art, and particularly a medical doctor who treats eyes, would have that same meaning. And in fact, the intrinsic evidence So are you saying that the district court, I'm sorry to interrupt, but are you saying that the district court here properly should have looked at extrinsic evidence to just pick the wrong extrinsic evidence because there are medical instructions and manuals and other things that define a swab as including non-absorbent? Is that your argument? Our argument, Your Honor, is that the district court didn't even need to get there because there were references in this case, and I would point to the Freeman reference, and we've put an image of that reference in our gray brief, refers to elements as swabs, says that they can be made of a non-absorbent material, and uses them to contact the eyelid. Those are... So that may be, but putting aside the question of the intrinsic evidence, if the extrinsic evidence involves dictionaries, which uniformly define swab as made of absorbent material, how does the fact that there may be isolated references such as Freeman that use it differently, all that helpful to you? It's helpful for two reasons, Your Honor. It's helpful because it's intrinsic evidence, and so it's more important than the extrinsic evidence, and it's also helpful, Your Honor, because if you consider what this construction is doing, this construction is limiting all swabs to absorbent swabs, and the intrinsic evidence, not the extrinsic evidence, the intrinsic evidence demonstrates that is not the case, and the extrinsic evidence... How is Freeman intrinsic evidence? Oh, because, Your Honor, it was cited in the patent. It was cited in the prosecution history. It is from the prosecution history. That makes it intrinsic evidence, but, Your Honor, even if we then turn to the extrinsic evidence, if we start with the experts who were talking about swabs in their field, they admitted, both experts admitted that non-absorbent swabs exist, and the medical supply catalogs used to order swabs also demonstrate that non-absorbent swabs exist. It's only when you get to the dictionary that you find suggestions that swabs in general require absorbency, and even if every dictionary says absorbency for swabs generally, we still have to put a primary emphasis on the intrinsic evidence and the extrinsic evidence related to this specification, and all of that lines up in the same direction, that even if swabs are primarily, usually, normally absorbent, they are not all absorbent. There are non-absorbent swabs, and, Your Honor, that is not disputed, and for that reason, we would say the district court erred. Thank you. Thank you. We'll hear from the other side now. This is Jason Blackstone for Pain Point Medical Systems, DVA at MIBO. I would like to start with the intrinsic evidence and then move to the extrinsic, and the first point is regarding the claim differentiation argument that our counsel just made regarding the Claim 11 swab. It actually is described as a medical-grade swab, and so I think that their attempt to satisfy that and still be absorbent. Okay. I understand that. Let me ask you about the key sentence relied on by your friends on the other side, which is at Column 3. Why is that not sufficiently broad and clear to discount the fact that the embodiment is the only thing we're talking about and to support Mr. Kelly's argument that any material suitable for contacting the eye is covered under the definition of swab in this context? Okay. I think that the district court said it best when it said that the difference is what the swab is made of and what a swab is. Telling you that it can be made of certain materials doesn't tell you the characteristics of the swab, and I think it's clear from the extrinsic records that that's the correct way to look at it. But wait a minute. We're talking about here what it's made of. That's the central question in this case is what it's made of, whether it's absorbent or non-absorbent material. So I don't really understand your answer. So an absorbent material can be... I guess a non-absorbent material can be made in absorbent material depending on the structure that it takes. So if you have a single thread, that would not be considered absorbent, but you weave it into a cloth fabric like a cotton gauze, then it becomes absorbent. Okay. Were you on the call when we discussed the rest of this column three and four? Did you listen? Yes, I was. Okay. Are you now agreeing that this one sentence at the bottom of three has to be read in isolation from the rest of the material at the top of column four? No, I'm not. Okay. So how do we read the specification? It seems to me that that sentence is linked to the discussion of the sponge and that it should be seen as soft, porous, and resilient. But the discussion... We're talking about an embodiment. We've got a numerous number of cases that talk about not limiting the invention to one embodiment disclosed. Column four is all about the embodiment. So what are we to make of the sentence in column three that Judge Dyke and I have been talking about? So I think that that has to fit within the definition of a swab. And so when you say that it is a swab, that means that it is absorbent in its normal use. And so if you say that it can be made of a material that can satisfy not harming the eye, that material also has to be absorbent because it has to be subsumed within the definition of a swab. And they didn't make an exception and say, this is broader than a swab is. This is not an absorbent substance. They didn't do anything like that. They did not serve as their own swab. So it's a broad... It claims to be a broad definition, but when you look at it, it still has to fit within the parameters of a swab, which is absorbent. Can I ask you for a point of clarification? Mr. Kelly, at the end of his remarks, talked about the experts. And I think if I heard him correctly, was saying that both experts agreed that swabs could be absorbent and non-absorbent. I thought that the district court discounted the experts because they said different things. And so he just said, it's a draw. I'm not going to consider it. What is the reading of the expert testimony? So my reading of expert testimony is that Heim, during his deposition, it's appendix 51-57, said that some swabs could be non-absorbent. And then stated that the swabs cited by Dr. Donizel absorb oil. And then Dr. Kalman, in his rebuttal declaration, showed that swabs composed of hydrophobic materials, such as Dacron or polyester, can actually be absorbent. And when you look at the marketing disclosure, it's talking about the release of bacteria and not the absorption of fluids. But he seems in his deposition testimony to have contradicted his expert declaration. I'm sorry, which expert was that? Your expert. Are you talking about Mr. Heim? Hello? Yes, I'm sorry. Are you talking about Mr. Heim? I think if you look at the deposition testimony, he admits that there may be some swabs that are not absorbent, but then also says that example that was provided by Dr. Donizel actually does absorb oil, which is one of the substances that the specification says should be picked up in column one around line 33 or 35. Okay. Well, he says here, this is on 5157, he says, I wouldn't characterize every swab as being absorbent. How is that consistent with his expert declaration where he says that swabs have to be absorbent? Okay. I think the expert declaration that you're talking about is a different expert too. The second expert we're talking about is Dr. Kalman, and the deposition is of Warren Heim. So, Dr. Kalman is the one that explains that the hydrophobic thread swabs can be absorbent. And Mr. Heim said that he thought there could be some swabs that were not absorbent, and then identified the one that was identified by Dr. Donizel as being absorbent of oils at least. Okay. So, did Heim submit an expert declaration? He did. Did he address this question in the declaration? I do not remember. From the portion that we cited in the record, he does not address that. I see. Please continue. Okay. And I would also like to- Mr. Kelly also referred to the Freeman reference multiple times as supporting a non-absorbent swab. And when you look at the Freeman reference, it's actually a pair of forceps. It's not for cleaning the eye or performing actions that Chabot or Gilbert are. It's actually just to grasp the eye and potentially debris, but it doesn't disclose grabbing debris. It just discloses grabbing the necessity for an absorbent swab or the idea that is actually the same type of area seems fairly limited to me. And going to the Donizel reference, the court directly said that it did not find Dr. Donizel to be credible because his reference to the Dacron swab referred to the description of the material making up the swab as the thread and not the swab itself. And Blethex has really not countered that with anything substantial. Any further? So, I'd also say that Chabot and Gilbert references are much closer. They actually involve cleansing of the eye, and they both disclose absorbing swabs. So, when you see references in the prior art that are the closest to what is being used, they are directly showing that they need to be absorbent materials. And then when we turn to the dictionary definitions, these are not just broad dictionary definitions. Dr. Kalman in his declaration showed that the Stedman definition was from the most prominent medical dictionary used in space, and then also that there was another definition that required absorbency from the dictionary of optometry and visual sciences. So, this is not a situation where you have overly broad dictionary definitions that don't relate to the subject matter. These are on point and in line with the normal understanding of swab as being absorbent. And I think with that, I will pass my time if there are no other questions. All right. Thank you. Thank you. Mr. Kelley? Thank you, Chief Judge Prost. I'd like to begin by directly addressing the distinction between his expert declaration. So, they are consistent. He is saying at the deposition that not all swabs are absorbent. And if you look to his expert declaration, and I'm referring now to the appendix at page 4641, his position is not that it's the word swab that gets him to absorbency in this case. What Haim is saying in his declaration is that when he reads the 718 patent, he doesn't think that what happens in the 718 patent could be done with anything other than absorbent swabs. And you see this in paragraph 68. He says, a person of ordinary skill in the art would not have understood that only absorbent swabs may absorb the liquid solution that aids in the removing of the debris. So, even Maibo's witness is not saying that swab is absorbent because that's what swab means. He's saying swab is absorbent because it has to be absorbent in the context of the 718 patent. And that leads me to my second... Other experts said the general definition, relied on the general definition, right? Yeah. He referred to the general definition of the word swab. But what's important is the definition of the word swab in this field. Haim says it doesn't have to be absorbent. We have intrinsic evidence that shows it's not absorbent. And when it comes to the function of this invention, the function is a physical impacting of things on the eye. The swab rotates, it vibrates, it reciprocates so that it can break, scrub, exfoliate, buff. Its movement is at a speed sufficient to remove debris. This is not debris floating in the eye. This is debris that is affixed to the eyelid margin that home care cannot remove. The invention here is something that impacts that debris to scrub it off the eyelid. That's not an absorbency issue. That's an impact issue. That's a scrubbing issue. Nothing about the 718 patent requires absorbency. Mr. Blackstone just referred to absorbency. The declarant referred to absorbency. And that's just not a part of this patent. That's not a part of the removal procedure. I think I'm out of time. I will leave it at that. Thank you. We thank both sides. And the case is submitted. Thank you.